All right, thank you. You can be seated. All right, whenever the appellant is ready, we will be glad to hear from you. Good afternoon. May it please the Court, I am Georgina Araneta and I am representing Mr. Hemza Lefsih. I know this has been an interesting week for this Court and we will continue in that same vein with another immigration case. The issue before you today is whether Mr. Lefsih, the defendant in this case, was denied a fair trial by the District Court's comments and questions that expressed an opinion that it disapproved of the government program under which Mr. Lefsih obtained his permanent resident status or the green card. Now this issue is subject to the plain error standard of review. I was the defense attorney at trial and didn't object during the trial and there are two reasons that I did not object. In this particular case, to object during the trial was worse than letting the Court's comments and questions go because the only remedy, if the objections had been sustained, was for the Court to instruct the jury to ignore his comments and questions, which would even have brought more attention to his questions and comments and would cause the jury to even think more about it, thus giving it more importance and weight. But he did give you the general charge at the end of the trial, don't take anything I said that I'm in favor of one side or the other or something to that effect, didn't he? He did, Your Honor. Was that enough in this case? At the very end of the trial, he did, Your Honor. Was that enough in this case? Sorry? Was that enough in this case? Well, I don't think it was enough. The other thing is, and the other reason is, making objections to the actual judge who is presiding over his very own behavior is obviously openly confronting the judge, and it's a hostile act. But that's a decision a trial judge has to make, I mean, a trial lawyer has to make all the time. Correct. And I'm explaining... You just have to make a decision. Right, exactly. Let me finish. You have to make that decision. Am I going to object or am I not? Am I going to let it go or am I going to draw attention to it by objection? I just don't know that we can excuse a failure to object and apply some kind of different standard to the problem because you made the trial decision, strategic decision, I'm not going to object. I'm not making that argument. I'm just explaining that this is the plain error standard, and I'm just explaining why I made that decision. So in the end, such an objection is not well accepted by any judge, and then you end up with a situation where the court is not only openly hostile to the defendant, but to his counsel. It doesn't matter why you're talking about all this. Okay, that's fine. I will continue. In applying the plain... I don't want to cut you off. I just don't understand, if you agree with me, that it's not relevant. Why do you want to spend time... All right. Well, thank you. Well, I want to follow up on that. Is it relevant or is it not? And were his substantial rights effective, which is the test of a plain error? Correct. So don't let something go that you... Correct. And so in applying the plain error analysis, I have three prongs to meet. One, was there an error? Second, was it plain? And did it substantially affect the rights of the defendant, or put it another way, did the error actually affect the outcome of the proceedings? And it is my position that the judge's comments and questioning was an error. It was quite obvious what was happening, and it did affect the substantial rights. So let's examine what happened in this trial. We have a young Algerian permanent resident who applied for U.S. citizenship on immigration form N-400. Question number 23, on that form asks, have you ever been arrested, cited, or detained by any law enforcement officer, including any immigration official, or any official of the U.S. armed forces, for any reason? Mr. Lefsy testified at trial that he did not understand question 23 to include traffic violations, which is what the government argues it included. Mr. Lefsy, as a taxi driver and driver of a car for the first time in this country as an adult, had been issued 11 tickets, 7 violations, and 4 infractions. His FBI background check also indicated that he did not have a criminal background. He answers no to the question, and the government claims he on purpose answered no, while Mr. Lefsy denies he did it on purpose, but rather it was due to a mistake, because he did not understand that the question includes traffic violations. Counsel, can I just, so I know where you are in your argument. Are you talking now about your deficiency argument, or are you making, is this about to turn into a question about why the comments in this case were so prejudicial? Yes, I'm leading up to, yes, so I'm leading up to why. So, the government presented its case through two government agents, Special Agent Tony Bell, and immigration official of the local immigration office, Gary Freitas. Mr. Freitas was used to explain the immigration program under which Mr. Lefsy obtained his permanent resident status, which ultimately let him apply for U.S. citizenship. Mr. Freitas was asked to explain the general requirements for citizenship, and while he was, while the government attorney was trying to develop the testimony about the diversity lottery program, the program by which Mr. Lefsy obtained his status, the court continuously interrupted, asked questions, and made sarcastic and inappropriate questions and comments, which demonstrate that he has disdain for the program and doesn't approve to it. I would like to draw your attention to some of the comments made by the court. The government attorney had asked Officer Freitas four questions only, and then the testimony continues. Finally, the court asked, okay, do you think anybody in America knows about this other than the committee that sent it through Congress? Probably not. And it's your job. Don't you love Congress? I mean, unbelievable, unbelievable. I'm sitting here 32 years, first time I heard this. Go ahead. Testimony continues. The court interrupts again and states, so actually Gary Freitas is saying, it lists them alphabetically starting with Afghanistan through. The court interrupted and answered Zimbabwe. Officer Freitas answered Zimbabwe, and the court said, don't take my word for it. Is that true? It might be Zaire. Officer Freitas responded Zimbabwe, yes. The court then said, like on property, you know, you just guess it if you don't know the answer. Questioning continued. When Officer Freitas was testifying about the winning odds of getting an immigrant visa through this program, the court asked, so if you get lucky and win the lottery and get a card to come to America, you can drag along your ten kids and four wives or what? And this was right after Officer Freitas testified about the figures for Algeria, a Muslim country. This episode clearly shows a disdain for the manner in which Mr. Lefsley entered this country, albeit legally, and with permanent resident status by the court. This set the stage for the jury, one of disapproval of the defendant. I wonder if you could go back to Judge Floyd's question, because the judge does finish at the end of the trial, right, with a curative instruction saying, nothing I say or do during the course of trial is intended to indicate what the verdict should be. I don't have a position on the outcome of the case. Don't think that because I make a ruling one way or another, I think the case should come out that way. And that, can you explain why you think that was insufficient in this case? Well, I believe it was insufficient because he already had influenced the jury. When the jury is hearing about this program, they're processing in their minds what the judge is doing. He's ridiculing the program. This whole case is about immigration. It's about his ability because of a program. Aren't you with curative instructions closer to the time of the actual comments? If the would that have been different than what we have here, where we just have pro forma, standard curative instructions at the end of the trial? Don't we have case law suggesting those are two very different things? That is true, but I truly believe in this type of case, that would have been insufficient as well. Although you don't have to win that to win your case. You only have to win the other thing. Correct. Yes. And so what I want to point out, though, is this particular government agent, I've counted the testimony from the transcript. His total direct was consisted of 26 pages. His description of this diversity lottery program consisted of about 12 to 13 pages. This was about half of his testimony. When you have a judge who is showing disrespect as a government employee of a government program and is ridiculing the people who use the program, I think having, in my opinion, having a curative explanation that you are to ignore it would just not cure it because this would already have affected those people who already have a bit of an anti-immigrant sentiment and to have the judge represent the government to be a person of authority ridiculing this program, how could that not affect their conclusion that he was not entitled to citizenship? Because in the end, that was the real crux. He was denied his citizenship application because the government says he lied on his application on purpose. So, I also want to bring out the fact that a motion for judgment for acquittal was given orally after the government rested and after the jury verdict and then after the trial a written motion was filed. That written motion was still pending four weeks after the trial, after the jury verdict, and the judge hadn't even made a ruling on it until almost near the end of the sentencing. So, in review of the cases in this circuit using the plain air standard, one of the things that is analyzed is whether there was compelling and overwhelming evidence against the defendant. I submit to you that there was not compelling and overwhelming evidence against Mr. Lefsey because if it took the court four weeks to decide if after viewing the evidence in light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the crime beyond a reasonable doubt, which is the second issue in this appeal. You want us to take into consideration in judging the merits of a judge's ruling, you want us to base that in part on how long it takes him to rule? All I'm saying is one of the elements that has to be examined in this analysis about whether he received an unfair trial is whether there was compelling and overwhelming evidence against the defendant. And as evidence and proof that there was not overwhelming evidence and compelling evidence is the fact that it did take the judge almost a month to make a decision. Do you think that's all he's got to do is worry about that motion as part of his job and business? Of course not, but I do think that is a factor that needs to be examined. The second issue in this case is whether the trial court erred in denying the motion for Mr. Lefse knowingly make a false statement and was a false statement material. During the trial, immigration forms were presented, form I-485 and N-445, which showed that the immigration in certain applications when asking about whether people had been arrested, cited or detained would specifically reference including or excluding traffic violations. Mr. Lefse was never specifically asked if he had ever been issued traffic violations and there was no evidence that he had ever been asked. Counsel, I just want to get my hands around your position on this. Is it your position that a jury cannot reasonably infer from an admittedly false answer to a question that the answer was knowingly false, assuming there was no language barrier? You can't get to a jury simply on the fact that we asked the question, the answer was false, let the jury decide whether it was a mistake or not? Well, no, that is a proper Because they had that here, right? They had a false answer. Correct. But I thought you just said that wasn't enough to go to a jury. No, sorry, I misspoke. That was not my point. My point was that there was insufficient evidence that it was purposely made. Okay, and my question for you is, so does it follow, should I, the ruling you want us to issue is that the government cannot get to a jury if the only evidence they have is that the answer was false and the person speaks English. They need something more than that in order to make this a jury question about whether the admittedly false answer was knowingly false. Correct, yes. What else do they need? Okay, well, there has to be more evidence. There has to be something to support that. What kind of evidence? Well, I would say if he, prior and consistent statements, if he had been directly asked the question, which I guess in the end, for me, goes to prior and consistent statements and there wasn't any evidence of any prior and consistent statements, or there wasn't any evidence that the questions were asking about traffic violations, the applications that this client completed to get his permanent residence were different from the applications that were published to the jury where they made reference to excluding and including traffic violations. If he had followed the process from within the U.S., he would have already been on alert that this immigration considers an arrest or detention in connection with a traffic violation, but the forms that he completed never made any reference to that, so he was not able to make that connection. Okay, thank you very much. You have some time remaining for reply. Thank you. Let's hear from the government. Thank you, Your Honors. Barbara Coker from the government. It is significant in this case that before any remark was made by the judge, the jury had heard the substantial, sufficient, and significant evidence about the knowing falsehood by this defendant. Further, in consideration of the judge's remarks in their context, they paint a picture than the individual who was tried before him that day. I'll get to both of those in turn. First, turning to the substantial evidence that the jury had heard before the remarks. Again, note the timeline of this trial. The testimony of the government's witnesses lasted approximately two hours, two and a half hours. Preliminary instructions were given, as the Court has noted. So the trial began with preliminary instructions, not to take into account anything the judge might say, that he's there totally as a referee. Trial begins with the testimony of Tony Bell, the special agent for immigration. The jury knew at the close of that first day of trial that the defendant was a student and had taught science at Paris, France, that he had worked on or had achieved a master's degree in physics, that he had come here to the United States, that he enrolled in a community college, that he had excellent grades there, including A's in American literature, American government and American history, had passed English proficiency tests, that he was currently then a chemical engineering student at North Carolina State University, a nationally ranked university and program, that he had researched and knew the intricate differences between the different types of visas and had told the agent in conversation that he had chosen decided to go for the lottery visa because it was a better class of entry. The jury knew at the end of that first day of trial that this defendant had researched college funding opportunities here in the United States. When asked why did you leave a physics master's program and come and go to the community college, the defendant had an answer to that. He had researched it. He knew more grants were available for that lower level education. So to him it was a win-win. He might not be in a graduate program, but he got government-funded education. They knew that the wording of question 23 was, and this is the question at issue, have you ever, ever in bold letters been arrested, cited or detained for any reason? And they knew that his answer had been no. They knew at that point in time, at the end of the first day, that he had in fact received 11 citations. Basically, can I sort of ask you the same question I asked your colleague? So your position is, look, there wasn't a language barrier. This guy sort of knows his way around the English language, and he answered falsely. And that is enough to get to a jury on whether that was an intentional falsehood. Is that your position? That is correct, Your Honor. That is the government's position. I do believe that there's more evidence than that in this case, but yes. But was there more evidence than that that was introduced sort of at the relevant time? Didn't the government reserve the Rule 29 motion? And can we only look at the information that was in front of the jury? That is the standard for Rule 29. Okay. That's correct. But, no, I believe the other information came in the form of those citations that were admitted to trial. Okay, right. So false answer, he spoke English. That's all we can look at. I'm sorry. That's enough to get to a jury, and then it's up to the jury. That's your position. That is correct. And then what else I have are other things that the jury has. I want to ask a question about that. Are you saying just because he speaks English is enough, or can the jury take into consideration how well he speaks English, how much he understands? Absolutely, Your Honor. What I understood Judge Harris's question to be was whether, or perhaps an even more succinct way to say it is, is the fact that an answer on a form is shown to be false itself reason to get to a jury? Because, really, whether the defendant speaks English and how well he speaks would be a matter of promise to the jury itself. I think that your colleague's approach to this case is that it was the ridicule of the fast-track lottery program, which is a government-sponsored program. So, therefore, even though the jury knew all this stuff ahead of time of Judge Boyle's comments, those comments tend to push that jury over, if there were any doubt, about his ability to read and understand the question. So I take it that's her position. So what say you? I say a number of things in that regard. First of all, the strength of this evidence that I had begun laying out cuts the other way. Well, can I just stop you before you move off the strength of the evidence? I mean, I take your point about what can go to a jury and what can't. But I'm looking at the question, and in fairness, it is tucked in to a bunch of stuff that seems, for want of a better word, to be about, like, real crimes, right? And is it really implausible that someone could have looked at this and thought, this probably doesn't include traffic tickets? And don't most government forms, when they mean traffic violations, say traffic violations? Your Honor, again, that would – I actually had a question. Like, if I get a seating camera thing in the mail, do I have to answer yes to this question? I speak English, and I don't know the answer to that. Does that – I guess that would count as a citation? I believe that that would be called an assessment rather than a citation. Oh, so it wouldn't count. I'm not – I'm sorry, I'm a government employee, and I can't give legal advice. But I believe that it would not have the word citation. We're fine. It would not have the word citation right in the title of the document. This fellow was a taxi driver. These 11 citations were significant to his livelihood. They were recent. The court proceedings occurred from July of 2012 to October of 2014. He hired an attorney on five occasions, paid a significant amount in fine and fees, not to mention the legal fees. It's not as if this was a red light camera. That would be a good example that you pay and you go on and don't ever think again. These affected the gentleman's livelihood. A reasonable jury is likely to find that he remembered these incidents, but that's not his argument, right, that he forgot. It's that he didn't think he knew about them and he remembered them. He just didn't think that it counted as being arrested, cited, or detained by a law enforcement officer. And the jury did not believe his testimony that it was a mistake. Right, but now we're going sort of to this, and I'm not asking you about whether it could go to a jury and whether a reasonable jury could convict, but about the strength of the case against him because I have to say it also doesn't strike me as implausible that somebody could make this mistake. If I can, turn to Judge Floyd's question about the judge's remarks, because the issues do tend to dovetail, and one, I agree, would feed on the other. First, Judge Floyd, the judge's remarks were refuted by the evidence in the record at the time he made them as to this defendant. If the, so the judge, and second of all, the remarks, but for the one regarding four wives and ten children, were exactly true. He and his questions brought out the true state of the diversity lottery program. I take umbrage on the judge's behalf with the idea that he expressed disdain for the program to the extent that disdain would require some foreknowledge. Didn't he say the bottom hundred countries? Didn't the judge say that this was immigration from the bottom hundred countries? On a list of 180, it's the lowest, it's the, literally the countries at the bottom of the list. Okay. Yes. Let me say, one of the things that concerns me about this is that it's not just criticism of the program. It's demeaning to the, he indicates poor attitude towards the people who are involved in it, such as the defendant on trial when he says the bottom 100, or they come over with their ten kids and four wives or what. I mean, that's just, that's not just the program. That's the people who are in it like this defendant. And I do agree, Your Honor. And I wish that the comment had not been made. The particular aspects of the program that were brought out by the judge's questioning were, in fact, true and I think could have been arrived at through different types of questions. Nevertheless, I don't believe that the judge's remarks had any effect on the outcome of this case. The, particularly looking at this defendant, there in the series that you're recalling, Judge Traxler, where the judge is referencing perhaps the education level of persons coming from the top countries rather than these bottom countries. The jury knew at the time that was being said that this defendant was highly educated. He was sophisticated. He had researched his own visa entry to find out what class of entry. He had researched the grant. Those types of inferences or implications, if you would, that the court made or could be perceived to have made weren't applicable to this defendant. They were almost nonsensical in that regard. The two other points, though, about that colloquy the judge had with that witness, then we come to the next segment, which is, so they just get to bring in their four wives and ten kids. That causes a cringe. It is very uncomfortable. But the answer, as this court has said innumerable times, it's not the question that is the scope of the focus. It's the question and answer. Parity, the case of parity in this case, when we're looking at a judge's remarks, it's context. It's the entire record the court needs to search to look for proof of bias or prejudice. In this case, the It's not just that. One of the other things you look at is the strength of the case. If the case is strong and overwhelming, then perhaps you could more easily say that it didn't influence the verdict. But if it's a very close case, perhaps like this one, where it could go either way, then they take on substantially greater significance. These remarks do. I want to come back to the witness's answer in regard to the four wives' comment. But responding to you, Judge Traxler, first, in regard to the sufficiency of the evidence, is it that the evidence did not seem overwhelming? It certainly is true it was all circumstantial. We had no text or videotape of this defendant telling someone else, I'm going to lie on the form. To that extent, it's true. However, the evidence that was there, given the jury disbelieved the defendant, is very strong to his sophistication, of his education level, of his hurry. Don't forget now, he post-dated that application. All of those things together, given the significance of these citations to his livelihood, are, in fact, substantial evidence. If they don't believe he lied, then there is plenty of evidence for them to discern that it was, in fact, a knowing violation. Getting back then to Judge's comments, the witness's direct response. So the judge says, so if you come in under this program, you bring your four wives, ten kids, or what? That witness immediately neutralizes that statement. No. He says, well, your spouse. So the judge goes on and says, well, your spouse, your uncle, your brother. And at that point, the witness says, no, no, your immediate family. And the judge says, immediate nuclear family. This is at page 152. And the witness says, yes. More telling and more important to this court's review is about four lines further down on that page. The witness has told the jury that you need to have a high school education, even under this program, in order to come into the United States. Judge Boyle asked, and good moral character. Now, I submit to you that any prejudice as a result of his earlier question about four wives and ten kids, he clarified here that a person entering into the United States under this program has to have good moral character. He essentially bolstered to the extent there was any problem before. The judge bolstered the character at that point in time by saying they had been screened at the time of entry for good moral character. And the witness says, yes. And Judge Boyle goes on to say, you can't be at war with the United States. And that's correct. Because that would disqualify you. Yes. So I urge the court, to the extent that there was anything prejudicial in the first portion of that, the judge himself neutralized it. But then we turn to the curative instructions. Judge Harris, you had asked about the curative instructions. At least five different ways the judge commented, and not just don't listen to what I say. In addition to the preliminary instructions, Judge Floyd, at the conclusion of the trial, and again, we're 26 hours, the opening instructions began about 309 the first afternoon, and the closing instructions are given at about 4 o'clock the next afternoon. So we've got this timeline. And the judge tells the jury, your sworn duty is to follow the law. You must follow the law as it is presented to you. Page 272 and 73 of the Joint Appendix, he says, it is also your duty to base your verdict solely upon the testimony and the evidence in this case without any prejudice or sympathy. That's the promise that you made and the oath that you took before you were seated as a juror in this case, and the parties have the right to expect that from you. Then he says yet again, if during the course of the trial I've made any comments, now this is the third time he's said this particular instruction, if I've made any comments, you should not interpret from them that I have any position or opinion about the outcome. He affirms in yet a different spot that you are the sole judge of the evidence and concludes on page 276 of the Joint Appendix with, I caution you, ladies and gentlemen, that you are here to determine the guilt or innocence of the defendant from the evidence in this case. You are not partisans, but, judges, your sole interest is to seek the truth from the evidence. We have always presumed that the jurors follow their instructions given. But we have held, right, that curative instructions should be given in sufficient proximity to the comment that raises the concern so that the jury will actually understand, oh, that's what the judge means. It's this thing about the four wives that I should ignore. It would be my position, Your Honor, that that would apply to an inflammatory statement. That's my reading as well. Did the judge make any other comments other than these during the trial? In other words, could the jury have believed his instruction pertained to something else other than questions, statements we've been talking about? Again, Judge Drexler, given the length of the case, there were a few other questions of a witness here and there with an answer briefly given. This was the only discourse, if you would. This was the only colloquy that occurred. And I think it would be very clear to the jury, if they had even perceived it to be a comment as to the outcome of the case, that this would be that to which he referred. Furthermore, the remarks that the judge made, and this goes into the court's review both of the context, not just the comments themselves, but the context of the trial. The government's theory was exactly the opposite, at least contrary to, the idea that an immigrant who comes in under this visa is uneducated and unsophisticated and not welcome to the United States. The government's theory of the case, what the government proved, was that the defendant was sophisticated, astute, intelligent, highly educated, knew exactly what he was doing both in terms of the immigration law and in terms of, as I go back to, the student loans. He knew that the date on the application couldn't be before August 19th of 2015 and dated it that way to cause that to happen. I guess my concern, I understand what you're saying, that to the extent the judge was saying, oh, we get sort of bad, not particularly valuable people out of this program, that might have been belied sort of by this defendant's credentials. But to the extent the judge was saying you get sneaky people who are abusing this program to bring in giant groups of people, including their four wives, and then the government proved, and this guy's sneaky too, right? The whole point of the government's case was this guy can't be trusted. This is his credibility. He's lying to you. And then you have a judge suggesting he's abusing, people abuse this program to bring in entire extended families along with their four wives. That's the part where it actually dovetails with the government's position, and that's the part that troubles me most. And I do understand your point, Judge Harris. One thing I think that we all here in this courtroom have had is the ability, as a Monday evening quarterback, to reflect over the comments and reflect over what happened and the record and what's happened. The jury, going to counsel's comments about the decision whether or not to object, it's a passing remark. And the jury did not have the ability to review and concentrate on the meaning of that interaction with the witness to the extent that Your Honor has. And so what I mean to say is it would almost have to be an insidious comment in order to raise it to the level that the defendant would want it raised. At best, it was a, I don't even know a word for it, but a subliminal issue, I guess, that it isn't possible for that remark, or it's highly unlikely that that remark, in the context of the trial, in a moving proceeding, would have the effect which concerns you. All right, although you are confident that at the end of the trial when the jury gets this general pro forma boilerplate curative instruction, they're going to know, oh, that must be the one about the four wives. Given the frame of the question as it had been asked to me, this was the only colic we have any significance with the witness. The jury decided, I'm sorry, my time is up, if I can just summarize very quickly. The jury decided that the defendant knew what a citation was, that the question pertained to citations, including traffic tickets, and that he had knowingly submitted the false answer of no. We ask that the court affirm the conviction of the defendant in this matter. Thank you. Let me also say that it's not lost on us the fact that this is not an issue of your creation, that you have to play the hand that you were dealt, and I don't want you to think we believe that this is a result of any questions or intent on the part of the government.  All right, let's hear a reply, please. Thank you. Judge Harris, I wanted in my reply to briefly touch on one of the questions you asked about when the case went to the jury whether a false statement was sufficient. I want to remind this Court that in addition to deciding whether a false statement was made, the jury also had to decide whether the statement was material, and that has not been disputed. Throughout the trial, there wasn't any testimony that the actual citations given to Mr. Lefsey would have resulted in the denial of his naturalization application, and even at the sentencing, the judge asked, why would it? How is it material? How is the statement, I don't have any arrests or detention or citations, the answer is no, how is that material? Would he not have been allowed to be a citizen because he had motor vehicle charges? And the response was no. That would not have affected his ability. All right, let me ask you this question. As you know, our law is that juries are presumed to follow the judge's instructions, and he told them at least twice, nothing I say or do during the course of the trial is intended to indicate, nor should you take it as indicating, what your verdict should be. Nothing I said, not just this part, but nothing I said should be taken. Now, how do you get around that law and the way we handle these particular issues? Well, Your Honor, I think it goes more to the psychology of the human mind. It's sort of like, in my opinion, when you tell a child not to do something and that is the first thing that the child wants to do, what you instruct the child not to do. Okay, well, we presume they're going to follow it. What evidence is there that they didn't do that, that they didn't follow his instructions, that they didn't do what he told them to do, which is don't consider anything I've said? Well, in my opinion, the fact that they came back in less than 30 minutes with a guilty verdict on all four counts when, in the end, there was the judge did not find compelling and overwhelming evidence against the client. And in the end, at the sentencing, the judge said that he believed Mr. Lefsey. He felt that he was sincere and he made the comment, but the jury didn't, so that's the way it goes. So, in my opinion, that goes, there wasn't overwhelming or compelling evidence. But that doesn't go to the question of whether or not they followed the judge's instruction in evaluating the evidence and ignoring what he said. Well, I think the fact that they came back with a jury decision in less than 30 minutes and before they even came back in less than 30 minutes, the judge was commenting that it was a very difficult trial, and the judge made the comment himself, and this is a very experienced judge, he's been on the bench for decades, has seen many, many trials, and he was surprised at how quickly the jury had come back with a verdict. So, in my opinion, if it was a complicated case, it was difficult, and you have the actual judge commenting on how quickly the jury came back, in my opinion, the only conclusion I can lead to is that they were influenced by the negative comments about this program, which were directly attributed to the defendant and also to the application for which he was applying. The program, how he got his permanent residence was ridiculed, and that program allowed him to apply for U.S. citizenship. So, the jury was under the influence of the comments of what a horrible program it is, and the client did not deserve to become a U.S. citizen. I want this court to understand that the issuance of the traffic violations against Mr. Lefsey, a total of seven, because four were only infractions, are not of the type to cause a denial of his citizenship application, especially in light of the fact that he only learned to drive as an adult when he arrived in the United States, and he became a part-time taxi driver. If this appeal is won, Mr. Lefsey, who has been sitting in jail awaiting this case for almost one year, will be released from ICE custody and will be able to keep his permanent residence status. If he wants, he can apply again for U.S. citizenship and most likely will get it, based on the factors testified to by Mr. Freitas, the government official. Mr. Lefsey's traffic violations do not prevent him from obtaining U.S. citizenship. It is respectfully asked that this court reverse and vacate the judgment of the district court. Alternatively, we ask for a new trial. Thank you. Thank you very much. I will come down and greet counsel and then take a brief recess of about ten minutes. Thank you.
judges: William B. Traxler, Jr., Henry F. Floyd, Pamela A. Harris